IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EMILY C.,[1]

        Plaintiff,

  v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

        Defendant.

Case No. 1:13-cv-01348-AA
AMENDED OPINION AND ORDER

---

Michael A. Halliday
Halliday Law, PC
494 State Street, Suite 250
Salem, Oregon 97301
    Attorney for plaintiff

S. Amanda Marshall
Adrian Brown
Ronald K. Silver
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Diana Swisher Andsager
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A

---

[1] In the interest of privacy and pursuant to the Court's Order (doc.34) granting plaintiff's Motion for Redaction (doc. 33), this amended opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable this amended opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – AMENDED OPINION AND ORDER

Seattle, Washington 98104
    Attorneys for defendant

AIKEN, District Judge:

Plaintiff Emily C. brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title II disability insurance benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On May 6, 2010, plaintiff applied for DIB. Tr. 125-28. Her application was denied initially and upon reconsideration. Tr. 86-90, 92-95. On March 28, 2012, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 34-81. On April 9, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 21-28. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court.[2] Tr. 5-14.

## STATEMENT OF FACTS

Born on January 26, 1975, plaintiff was 31 years old on the

---

[2] The record before the Court constitutes nearly 800 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

Page 2 – AMENDED OPINION AND ORDER

alleged onset date of disability and 37 years old at the time of the hearing. Tr. 41, 125. Plaintiff graduated from high school and a four-year college program. Tr. 43, 219. She worked previously as a cook helper, receptionist, and human resources clerk. Tr. 44-47, 76, 139. Plaintiff alleges disability as of January 13, 2007, due to a motor vehicle accident, which resulted in "[b]ack problems[,] lumbar pain," and fibromyalgia. Tr. 125, 160; Pl.'s Opening Br. 2.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1502. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step

five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national and local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of January 13, 2007[,] through her date last insured of December 31, 2008." Tr. 23. At step two, the ALJ determined that plaintiff's "cervical and lumbar strain" and "fractured ribs" were medically determinable and severe. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 24.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff possessed the residual functional capacity ("RFC") to "perform a range of sedentary work as defined in [20 C.F.R. §] 404.1567(a) except due to residual pain symptoms attributable to injuries sustained in a 2007 motor vehicle accident, she could perform no more than occasional stooping, crouching, crawling, bilateral overhead reaching, or climbing of ladders[,] ropes, and scaffolds." Id.

Page 5 – AMENDED OPINION AND ORDER

At step four, the ALJ determined plaintiff could perform her past relevant work as a receptionist and human resources clerk. Tr. 28. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. Id.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding her not fully credible; (2) rejecting medical evidence furnished by Clay McCord, M.D., Mark Eaton, M.D., Thomas Treger, M.D., and Alden Glidden, M.D., as well as physical therapists Ashlie Angel and Caroline Riblett; and (3) "ma[king] incorrect representations of the record." Pl.'s Opening Br. 12.

I. Credibility

Plaintiff asserts that the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom testimony concerning the severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).

A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not

credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that she became unable to work as a result of her January 2007 motor vehicle accident, which caused "excruciating pain . . . all throughout [her] body." Tr. 49. Plaintiff initially stated her pain "lasted well over six months;" however, towards the end of the hearing, plaintiff remarked several times that the "same complaints" and the "same pain" had existed from the date of her accident to present. Tr. 50-51, 65. Beyond reporting her capacity to engage in limited household chores, such as cooking, laundry, and grocery shopping, plaintiff was unable to recount the specific details of her daily activities or functional abilities during the adjudication period. Tr. 54-59, 61-64, 66-70.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her statements regarding the extent of these symptoms were not fully

Page 7 – AMENDED OPINION AND ORDER

credible due to her failure to recall specific facts regarding the time period in question, the lack of corroborating medical evidence, and her activities of daily living. Tr. 25-27.

Specifically, the ALJ first noted plaintiff's inability "to recall certain details from prior to the date last insured." Tr. 25. The ALJ may discredit a claimant's testimony that is imprecise "with respect to the alleged period of disability and pain symptoms." Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008). In other words, an adverse credibility finding is a determination that a claimant's testimony is not reliable, as opposed to dishonest. SSR 96-7p, available at 1996 WL 374186; see also St. Mary's v. Hicks, 509 U.S. 502, 520-21 (1993) ("[t]o say that the [witness] becomes a liar and a perjurer when the testimony is not believed, is nothing short of absurd"). Therefore, plaintiff's repeated admissions at the hearing that she did not know or could not recall salient facts concerning her pain or functioning from the dispositive time period is tantamount to an admission that the ALJ's credibility finding was valid. Tr. 42-71. Indeed, the record is replete with evidence evincing that plaintiff was a "poor historian." See, e.g., Tr. 332-34, 373, 392-94, 730,732.

The ALJ also found that plaintiff's "subjective complaints are not entirely consistent with objective medical findings documented as of the date last insured." Tr. 26. "While subjective pain testimony cannot be rejected on the sole ground that it is not

Page 8 – AMENDED OPINION AND ORDER

fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Where, as here, there is a remote date last insured, it is more difficult to determine the nature of a claimant's limitations attributable to severe impairments during the period at issue, such that contemporaneous self-reports to medical providers, as memorialized by their treatment notes, are the most accurate portrayal of functioning.

Treatment records from within or around the adjudication period do not reflect consistent reports of significant back or musculoskeletal pain. See Tr. 26-27, 229-312, 344-63, 432-94, 771-74; see also Greger v. Barnhart, 464 F.3d 968, 972-73 (9th Cir. 2006) (failure to report allegedly disabling symptoms to treatment providers during the adjudication period is a valid reason to discount a claimant's credibility). For instance, medical records from the emergency room on the date of plaintiff's accident show fractured ribs and abrasions, but no back pain or impairment upon examination, and imaging studies of plaintiff's spine were unremarkable. Tr. 233-38, 241-42, 246; see also Tr. 248-51 (approximately ten days after the accident, plaintiff only complained of rib and arm pain, and an examination of her back and neck were "normal"). In February 2007, plaintiff reported that her musculoskeletal pain was "getting better" and her rib fractures and hemothorax had healed. Tr. 262-66. In fact, she was "just having

Page 9 – AMENDED OPINION AND ORDER

pain" in her right hand at that time and this pain "was not bad enough" to use medication. Tr. 262. In March 2007, she sought rehabilitation because her "thumb hurt" when she "move[d] it certain ways." Tr. 280-81. In April 2007, plaintiff reported an increase in thumb pain after taking drum lessons, but otherwise a significant improvement in symptoms, such that "she was now doing okay except for some mild residual swelling and tenderness." Tr. 279. In July 2007, plaintiff reported "getting better slowly." Tr. 289. While, as discussed in greater detail below, plaintiff sought physical therapy thereafter, she did not obtain treatment from a doctor until September 2008, when she reported back pain that was aggravated by sitting, walking, standing, bending, lifting, and twisting, but nonetheless "improving." Tr. 302, 305. At that time, she had a normal range of cervical and lumbar motion, and normal reflexes, sensation, and strength. Tr. 304, 306. Subsequently, plaintiff did not seek treatment of any kind from September 2008 through June 2010 and she was not diagnosed with fibromyalgia until June 2011. Tr. 63.

In sum, the lack of corroborating medical evidence contravenes plaintiff's hearing statements that she had disabling back pain during the adjudication period. She does not now proffer a reason, finance-related or otherwise, for her failure to obtain regular services relating to her allegedly disabling impairments between January 2007 and December 2008. See Tr. 63-64 (when asked directly why she did not seek treatment between September 2008 and June

Page 10 – AMENDED OPINION AND ORDER

2010, plaintiff responded that she "was told with the physical therapy exercises [she received in October 2007 that] it would take a long time" to "recondition" and "retrain" her body). While plaintiff offers an alternative interpretation of the record, the ALJ's reading was rational, and is upheld. Burch, 400 F.3d at 679.

Moreover, the ALJ rejected plaintiff's subjective symptom testimony in light of her activities of daily living. Tr. 26-27. Daily activities may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations omitted). As the ALJ denoted, plaintiff was able to cook, clean, grocery shop, garden, drive independently, take drum lessons, socialize, attend numerous medical appointments and vocational rehabilitation, travel, and engage in certain forms of exercise, such as walking, stretching, and pilates, during and after the relevant time period. Tr. 26-27, 62, 147-54, 168-75, 185, 286, 289-90, 303, 332, 339, 374, 391, 462, 661. Thus, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. The ALJ's credibility finding is affirmed.[3]

---

[3] Therefore, plaintiff's contingent argument of RFC deficiency "is without merit." Collingswood-Banse v. Colvin, 2015 WL 853063, *6 (D.Or. Feb. 24, 2015). Plaintiff's conclusory assertion, without argument or evidence, that "[t]he ALJ improperly failed to evaluate each of the symptoms alleged [under the] the framework set forth in 20 C.F.R. § 404.1529(c)," is likewise without merit. Pl.'s Opening Br. 11. As the Commissioner observes, "the ALJ sufficiently addressed her activities, her pain, its causes and effects, her medication and treatment she underwent." Def.'s Resp. Br. 7 (citing Tr. 25-27).

Page 11 – AMENDED OPINION AND ORDER

II. <u>Medical Evidence</u>

Plaintiff argues that the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for rejecting evidence from Drs. McCord, Eaton, Treger, Glidden, and Ms. Angel, and Ms. Riblett. There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. <u>Id</u>.

A. <u>Dr. McCord's Opinion</u>

In June 2011, plaintiff commenced care with rheumatologist Dr. McCord. Tr. 403-04, 408. Based on a clinical interview and physical examination, the doctor diagnosed plaintiff with fibromyalgia. Tr. 404. In January 2012, Dr. McCord completed a check-the-box form prepared by plaintiff's attorney, wherein the only diagnosis he listed was fibromyalgia. Tr. 408-15. Although he assessed her pain as moderate, Dr. McCord nonetheless opined that plaintiff had been unable to work since 2007. <u>Id</u>.

The ALJ afforded "little weight" to Dr. McCord's opinion because it was "speculative" due to the remote date last insured and the fact that the doctor only began treating plaintiff in June

Page 12 – AMENDED OPINION AND ORDER

2011. Tr. 27. In addition, the ALJ noted that Dr. McCord's opinion was inconsistent with plaintiff's activities of daily living. Id. "[A]n ALJ may reject a medical opinion, even that of a treating doctor, where it was completed years after claimant's date last insured and was not offered as retrospective analysis." Morgan v. Colvin, 2013 WL 6074119, *10 (D.Or. Nov. 13, 2013) (citations and internal quotations and ellipses omitted). An ALJ may also reject a medical opinion that is contrary to the claimant's daily activities. Rollins, 261 F.3d at 856.

Here, the record supports the ALJ's conclusion. Plaintiff did not even begin treatment with Dr. McCord until almost three years after the date last insured. Tr. 408. Further, Dr. McCord's opinion does not meaningfully relate back to the period in question. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) ("[t]he fact that Dr. Winkler did not examine Appellant until November 12, 1993, more than a year after the expiration of her insured status, coupled with other contradictory medical evidence, fully supports the ALJ's determination that Dr. Winkler's [retrospective] submissions were not convincing"). While he indicated that "2007" was the "earliest date that [his] description of [plaintiff's] current symptoms and limitations [applied]," he did not provide any explanation for this conclusion and there is no evidence reflecting that he reviewed plaintiff's longitudinal medical record; Dr. McCord had also only seen plaintiff approximately two times before rendering this opinion. Tr. 403-04, 408-15; see also Crane v.

Page 13 – AMENDED OPINION AND ORDER

Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may "permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions").

As such, the ALJ reasonably concluded that Dr. McCord's opinion regarding the remote onset of plaintiff's fibromyalgia was speculative, especially in light of the fact that plaintiff underwent evaluation for fibromyalgia numerous times after her motor vehicle accident and prior to Dr. McCord's assessment, and did not meet the diagnostic criteria. See, e.g., Tr. 330 (Carl Barbee, M.D., noting an insufficient number of tender points to diagnose fibromyalgia), 333 (plaintiff reporting to Yolanda Suarez, D.O., that "she for sure doesn't have [fibromyalgia]" based on previous assessments), 370 (Barbara Gilbertson, D.O., finding, upon examination, that plaintiff "does not have any typical type tender points for fibromyalgia syndrome"); see also SSR 12-29, available at 2012 WL 3104869 (describing the diagnostic criteria for fibromyalgia). Regardless, as summarized in section I, plaintiff's daily activities both before and after the date last insured evince the ability to perform a limited range of sedentary work. The ALJ provided legally sufficient reasons, supported by substantial evidence, for affording less weight to the opinion of Dr. McCord.

B.   Records From the Remaining Sources

Immediately following her motor vehicle accident in January 2007, plaintiff was treated in the emergency department by Drs. Eaton and Treger. Tr. 229-46. In May 2007, plaintiff initiated

Page 14 – AMENDED OPINION AND ORDER

physical therapy with Ms. Angel, who was supervised by Dr. Glidden; treatment was terminated after one or two sessions because plaintiff "met all of her goals" and was "going on a trip back east." Tr. 283, 285-86, 290. Between September and October 2007, plaintiff underwent additional physical therapy with Ms. Riblett. Tr. 308-12. As plaintiff observes, chart notes from these providers generally reflect that plaintiff experienced residual pain and deconditioning following the automobile accident. In other words, there is no evidence from Dr. Eaton, Dr. Treger, Dr. Glidden, Ms. Angel, or Ms. Riblett inhering to plaintiff's functional capacities or ability to work.

The ALJ accepted diagnoses from these sources in evaluating step two and, accordingly, found that plaintiff suffered from the medically determinable, severe impairments of "cervical and lumbar strain" and "fractured ribs." Tr. 23. Additionally, the ALJ expressly discussed evidence from Drs. Eaton and Treger in formulating the RFC but did not afford any particular weight thereto. Tr. 26. The ALJ, however, did not address treatment notes from Dr. Glidden/Ms. Angel or Ms. Riblett. Nevertheless, because the reports of Dr. Eaton, Dr. Treger, Dr. Glidden, Ms. Angel, and Ms. Riblett "did not contain any functional limitations, they were not probative as to what kind of work plaintiff could perform despite [her] impairments and, therefore, the ALJ was not required

Page 15 – AMENDED OPINION AND ORDER

to formally assess, or even discuss, them."[4] Corso v. Colvin, 2014 WL 950029, *10 (D.Or. Mar. 11, 2014) (citations omitted).

This is because it is well-established that an ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999); see also Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly rejected a medical opinion that failed to explain the extent or significance of a condition); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period); 20 C.F.R. § 404.1527(a)(2) ("[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s)[,] what you can still do despite impairment(s), and your physical or mental restrictions"). The ALJ's assessment of the medical evidence is affirmed.

---

[4] Plaintiff's contention of error in relation to these sources is fatally flawed for two additional reasons. First, plaintiff failed to provide any argument or evidence regarding how the ALJ's treatment of this evidence was harmful. See McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011) (as amended) (the claimant bears the burden of establishing how an alleged error is harmful). Indeed, plaintiff did not even cite to the records from Drs. Eaton and Treger that were allegedly wrongfully rejected. Pl.'s Opening Br. 7; Pl.'s Reply Br. 6. Second, plaintiff neglected to acknowledge that evidence from non-acceptable medical sources cannot be used to establish the existence of an impairment at step two and, while relevant, is generally afforded less weight. 20 C.F.R. § 404.1513; SSR 06-03p, available at 2006 WL 2329939; Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).

III. Characterization of the Record

Lastly, although not stated outright, plaintiff argues that the ALJ's decision was invalid due to bias. A "presumption of honesty and integrity" exists in those who serve as adjudicators for administrative agencies. Withrow v. Larkin, 421 U.S. 35, 47 (1975). A claimant bears the burden of rebutting this presumption by showing "a conflict of interest or some other specific reason for disqualification" that is "so extreme as to display clear inability to render fair judgment." Rollins, 261 F.3d at 857-58 (citation and internal quotations omitted).

Plaintiff points to three alleged "incorrect representations" made by the ALJ to demonstrate "an obvious lack of careful consideration." Pl.'s Opening Br. 7, 12-13 (challenging the ALJ's characterization of her husband's hearing testimony, the date on which she stopped working, and her hypothyroidism). Plaintiff's argument is unavailing for two reasons. First, the allegedly "incorrect representations" were not, in fact, incorrect. It was reasonable for the ALJ to conclude, based on her husband, Neal C's hearing statements, that plaintiff's condition deteriorated after the date last insured. Tr. 25, 27, 73-74. Specifically, Mr. C. testified that plaintiff's condition "hasn't got much better since the car wreck," such that he has had "to do a lot more things" around the house since December 2008. Tr. 73-74. Further, despite her assertion to the contrary, there is ample evidence in the record reflecting that plaintiff's hyperthyroidism is "all controlled"

Page 17 - AMENDED OPINION AND ORDER

with medication, such that the ALJ appropriately found this condition "non-severe." Tr. 24; see, e.g., Tr. 280 (plaintiff reporting in March 2007 that her hypothyroidism was "all controlled and normal [with the medication] synthroid"), 673 (plaintiff remarking in July 2011 that "her hypothyroidism [is] well controlled on synthroid"). Finally, although the ALJ found that plaintiff's earnings from 2007 did not qualify as substantial gainful activity, she nonetheless accurately noted that plaintiff "reported in her initial application materials that she did not stop working until January 2009." Tr. 23; see also Tr. 160 (plaintiff's application listing "1/31/2009" as the date she stopped working).

Significantly, plaintiff does not argue error on appeal in relation to the ALJ's step one or two findings, or treatment of the lay witness testimony. See generally Pl.'s Opening Br.; Pl.'s Reply Br. Plaintiff therefore failed to carry her burden in establishing how this alleged error was harmful. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless); see also McLeod, 640 F.3d at 888. The ALJ's decision is upheld in this regard.

//

//

//

//

**CONCLUSION**

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this  5th  day of January 2021.


                          _____/s/Ann Aiken_____
                                     Ann Aiken
                         United States District Judge